UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Loyd Maeberry,

        Plaintiff,

v.

City of St. Paul, Minnesota; Police
Officer Amanda Heu (in her official
and individual capacities); Police Officer
John M. Peck (in his official and individual
capacities); Police Officer Michael J. Willis
(in his official and individual capacities);
Police Officer Gerald Carter (in his official
and individual capacities); Police Officer
Chad Dagenais (in his official and individual
capacities); and John Does 1-2,

        Defendants.

Civil No. 09-1216 (JNE/JJG)
ORDER

---

Jill Clark, Esq., Jill Clark PA, appeared on brief for Plaintiffs.

Cheri M. Sisk, Esq., City of St. Paul Attorney's Office, appeared on brief for the City of St. Paul, John M. Peck, Michael J. Willis, Gerald Carter, and Chad Dagenais.

Margaret A. Skelton, Esq., Ratwik, Roszak & Maloney, PA, appeared on brief for Amanda Heu.

---

This action arises out of the warrantless entry into Loyd Maeberry's apartment and his subsequent arrest by City of St. Paul (City) police officers in the early morning of October 3, 2006. Maeberry brought an action in state court asserting various constitutional violations pursuant to 42 U.S.C. § 1983 (2006). Defendants removed the action to this Court on May 26, 2009. The City, police sergeant John M. Peck, and officers Michael J. Willis,[1] Gerald Carter, and Chad Dagenais moved for summary judgment on March 31, 2010. Officer Amanda Heu

---

[1] Many documents identify this Defendant as "Michael Wills." The Court adheres to the spelling in the Complaint.

moved for summary judgment the following day. For the reasons discussed below, the Court grants in part and denies in part the motions.

I. BACKGROUND

Heu was driving alone in her squad car during the early morning on October 3, 2006, when she responded to a call from police dispatch indicating that an individual in an apartment complex had called 911 after hearing what sounded like two males arguing in an upstairs apartment.[2] Heu arrived at the complex and heard a loud male voice coming from an apartment with its lights on. Heu then entered the building and spoke briefly with the 911 caller who indicated that the argument had been ongoing for about one hour, that the argument was getting louder, and that she had heard what sounded like a struggle.

Dagenais arrived and accompanied Heu to the apartment identified by the caller. At some point while Dagenais and Heu were outside of the door to the apartment, dispatch informed them that an individual residing in the apartment had a history of domestic violence. Heu knocked on the door. Maeberry eventually responded to the knocking by asking who was there through the closed door. Dagenais indicated that it was the police and that they had received a noise complaint. Maeberry told him that "we'll hold it down." Dagenais then asked Maeberry to open the door. After Maeberry refused, Dagenais "said very loud and very mean in a scary tone, open up the goddamn door." Heu also indicated that she would not leave until she was certain that the occupants of the apartment were safe. A woman, who was later determined to be Mary Nunn, came to the door and, without opening it, indicated quietly that she was fine, told the

---

[2] Many facts are disputed. The Court, as it must, sets forth the facts in the light most favorable to Maeberry. *See Gosney v. Reliable Life Ins. Co.*, 293 F.3d 1052, 1053 (8th Cir. 2002).

2

officers that she was not going to open the door, and asked the officers to leave. The lights in the apartment were then turned off and everything was quiet.

At some point, Willis, Carter, and Peck arrived. Heu told Peck what she had learned from the caller and what she had observed. Based on that information, Peck decided to enter the apartment. Peck first asked the caretaker of the apartment complex, who lived in the apartment across the hall from Maeberry, if he had a key to the apartment. The caretaker did not have a key. Peck then attempted to kick the door open. That attempt failed and another officer obtained a sledgehammer.[3] Carter used the sledgehammer to break down the door.[4] At least three officers immediately entered the apartment with their guns drawn. Willis entered first. He encountered Nunn to his left as he entered, continued past her, saw Maeberry sitting in a chair in the kitchen, and continued past him to conduct a protective sweep of the rest of the apartment. There was no sign of a struggle inside of the apartment and no indication that Nunn had been assaulted. Meanwhile, Carter and Heu entered and handcuffed Maeberry. Maeberry asserts that he did not resist and that he merely asked the officers why they were "doing this," to which the officers responded "because you didn't open the door." After Maeberry had been handcuffed, he was allegedly sprayed in the face and ear with aerosol subject restraint (ASR) by Heu and another officer, rendering him temporarily unable to see.

Maeberry was then led outside by Heu, Carter, and officer Ronald Hagen. Maeberry, who still could not see, heard a car door open and claims that, without provocation, he was punched in the eye. The punch knocked him to the ground between a curb and the squad car.

---

[3] At some point before the sledgehammer was used, the caretaker told the officers that "the lady downstairs . . . called the police on everybody."

[4] It was later determined that for security reasons Maeberry and Nunn had installed a metal bar on the door that prevented the door from being opened from the outside even when it was unlocked.

Officers then began kicking Maeberry in the chest and stomach several times. He heard Heu say "oh, you're a woman beater, huh," at which time she hit him on the right arm several times with her flashlight. Maeberry also testified that while he was on the ground he "heard a male voice say we should tase the nigger." During this time, Heu and a male officer also said that Maeberry "should have opened the door." Several minutes later, Maeberry got into the squad car and was transported to jail. By the time Maeberry was transported to jail, eight police officers had arrived on the scene. Heu's incident report indicates that Maeberry was arrested for misdemeanor domestic assault in violation of Minn. Stat. § 609.2242 and misdemeanor obstructing legal process in violation of Minn. Stat. § 609.50. Maeberry was never prosecuted for those offenses.

Maeberry suffered severe bruising on his arm, chest, stomach, and eye. After being released from jail, Maeberry went to the emergency room where he was given a sling for his arm. According to Maeberry, his "whole body was in pain" for one to two months after the incident. His chest remained painful for about six months and his arm for seven months. Additionally, Maeberry testified that he suffered anxiety for one year following the incident and continues to experience fear every time he observes someone wearing a uniform.

## II.　　DISCUSSION

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies its burden, the party opposing the motion must respond by submitting evidentiary

materials that "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

Because § 1983 is "not itself a source of substantive rights," a court addressing a claim pursuant to § 1983 must "identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quotation marks omitted). In addition, "[l]iability for damages [under § 1983] is personal, so each defendant's conduct must be independently assessed." *Wilson v. Northcutt*, 441 F.3d 586, 591 (8th Cir. 2006).

**A.      Officers' individual liability**

Maeberry asserts constitutional claims against Peck, Heu, Dagenais, Carter, and Willis (collectively, individual officers) for illegal entry, illegal arrest, excessive force, failure to protect, and retaliation. The individual officers argue that they are entitled to qualified immunity either because the undisputed facts do not support the alleged violations of Maeberry's constitutional rights or those rights were not clearly established.

The doctrine of qualified immunity protects state actors from civil liability when "'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sexton v. Martin*, 210 F.3d 905, 909 (8th Cir. 2000) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A plaintiff overcomes the defense of

5

qualified immunity by showing that: "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (quotation marks omitted). A court may "'exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Id.* at 1001-02 (quoting *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009)). "[T]he qualified immunity question requires [a court] to assess the facts as they appeared to the officers." *Greiner v. City of Champlin*, 27 F.3d 1346, 1354 (8th Cir. 1994).

### 1. *Illegal entry*

The individual officers argue that their entry into Maeberry's apartment was proper because they held an objectively reasonable belief that someone inside needed assistance. The warrantless entry by police into another's home is presumptively unreasonable in violation of the Fourth Amendment. *Payton v. New York*, 445 U.S. 573, 586 (1980). This presumption is overcome when "'the exigencies of the situation make the needs of law enforcement so compelling that the warrantless [entry] is objectively reasonable under the Fourth Amendment.'" *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (quoting *Mincey v. Arizona*, 437 U.S. 385, 393-94 (1978)). One such exigent circumstance exists when an officer "reasonably believe[s] that a person within [a home] is in need of immediate aid." *United States v. Spotted Elk*, 548 F.3d 641, 651 (8th Cir. 2008) (citing *Stuart*, 547 U.S. at 403). This is an objective inquiry in which the subjective motivation of the officer is irrelevant. *United States v. Valencia*, 499 F.3d 813, 815 (8th Cir. 2007). If the warrantless entry is justified, the police "may conduct a protective sweep, or cursory inspection of places where a person might be, if the facts would

justify a reasonable officer in believing that there might be someone dangerous in the house." *Spotted Elk*, 548 F.3d at 651.

The Court determines that the officers held a reasonable belief that an exigency existed justifying a warrantless entry into Maeberry's apartment. Specifically, at the time of the warrantless entry, the officers had information indicating that an argument in the apartment had been ongoing and escalating for about one hour, that a struggle had possibly occurred, and that an occupant of the apartment had a history of domestic violence. Maeberry's refusal to open the door would have only increased the officers' suspicion that someone within the apartment needed assistance. Furthermore, the officers were under no duty to leave the premises simply because Nunn indicated through the closed door that she was fine and asked them to leave. *See Hanson v. Dane County,*, No. 09-1759, 2010 U.S. App. LEXIS 12163, at *3 (7th Cir. June 15, 2010). "[D]omestic disturbances are highly volatile and involve large risks," *United States v. Henderson*, 553 F.3d 1163, 1165 (8th Cir. 2009), and "[m]any victims of domestic violence fear that the danger they face will increase if they assist police or prosecutors," *Hanson*, 2010 U.S. App. LEXIS 12163, at *4. Police officers responding to situations involving possible domestic violence must have sufficient leeway to make snap judgments based upon imperfect information.[5] The officers' belief in this case that someone inside the apartment needed immediate aid was not objectively unreasonable. Accordingly, summary judgment is warranted on Maeberry's claim against the individual officers for illegal entry.

---

5     The Court recognizes that the initial call to dispatch was a noise complaint about two males arguing. The officers, however, became reasonably concerned that they were responding to a domestic violence situation after the 911 caller indicated that she had heard what sounded like a struggle, they learned that one of the apartment's occupants had a history of domestic violence, Maeberry refused to open the door, and Nunn quietly told them to go away.

7

2. *Illegal arrest*

The individual officers next maintain that Maeberry's illegal arrest claim fails because arguable probable cause existed to arrest him for disorderly conduct.[6] "It is clearly established that a warrantless arrest, unsupported by probable cause, violates the Fourth Amendment." *Baribeau v. City of Minneapolis*, 596 F.3d 465, 478 (8th Cir. 2010) (per curiam). "Because the qualified immunity privilege extends to a police officer who is wrong, so long as he is reasonable, the governing standard for a Fourth Amendment unlawful arrest claim is not probable cause in fact but arguable probable cause." *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005) (quotation marks omitted). "Probable cause exists when the totality of the circumstances shows that a prudent person would believe that the arrestee has committed a crime." *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Moreover, "an officer's authority to arrest for misdemeanors is not limited by any constitutional requirement that the offense be committed in the presence of the officer, or that the arrest occur promptly after the commission of the offense." *Baribeau*, 596 F.3d at 488 (Colloton, J., dissenting in part) (gathering authorities). In assessing probable cause, a court examines "the objective facts available to the officers at the time of the arrest." *Sheets v. Butera*, 389 F.3d 772, 777 (8th Cir. 2004). This includes "the collective information of all the officers." *White v. United States*, 448 F.2d 250, 254 (8th Cir. 1971). A court gives the officers "substantial latitude in interpreting and drawing inferences from [those facts]." *Kuehl v. Burtis*,

---

[6] The individual officers also contend that arguable probable cause existed to arrest Maeberry for domestic assault and obstructing legal process. As discussed below, because arguable probable cause existed to arrest Maeberry for disorderly conduct, the Court does not address this contention.

173 F.3d 646, 650 (8th Cir. 1999) (quotation marks omitted). However, an "officer contemplating an arrest is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists." *Id.*

Minnesota's disorderly conduct statute makes it a misdemeanor to, in a public or private place, "engage[] in offensive, obscene, abusive, boisterous, or noisy conduct or in offensive, obscene, or abusive language tending reasonably to arouse alarm, anger, or resentment in others," if the person engaging in such conduct "know[s], or ha[s] reasonable grounds to know that it will, or will tend to, alarm, anger or disturb others." Minn. Stat. § 609.72, subd. 1(3). The Minnesota Supreme Court construed § 609.72's prohibition on offensive, obscene, or abusive language narrowly "to refer only to 'fighting words.'" *In re S.L.J.*, 263 N.W.2d 412, 418-19 (Minn. 1978). *S.L.J.*, however, did not similarly limit the proscription of "boisterous or noisy conduct." *In re T.L.S.*, 713 N.W.2d 877, 880 (Minn. Ct. App. 2006). The disorderly conduct statute may thus "be applied to punish the manner of delivery of speech when the disorderly nature of the speech does not depend on its content." *Id.* at 881. "Whether particular conduct constitutes disorderly conduct depends on the facts and circumstances of each case." *State v. Ackerman*, 380 N.W.2d 922, 926 (Minn. Ct. App. 1986).

In this case, the issue is whether the individual officers had arguable probable cause to arrest Maeberry for engaging in noisy conduct with reasonable grounds to know that such conduct would, or would tend to, disturb others. The relevant facts known to the individual officers at the time of Maeberry's arrest consisted of a 911 call from an occupant of the apartment complex in the early morning complaining of two males arguing loudly, Heu's personal observation of a loud male voice coming from Maeberry's apartment, and additional information from the 911 caller indicating that the noise had been ongoing and escalating for

9

about one hour and that there had potentially been a struggle. These facts support arguable probable cause to believe that Maeberry had committed the misdemeanor offense of disorderly conduct.[7] *See id.* at 926 (finding sufficient evidence to convict defendant of disorderly conduct based in part on defendant's "yelling and swearing" that occurred in his residence); *State v. Stolp*, No. C9-88-2170, 1989 Minn. App. LEXIS 832, at *4-5 (Minn. Ct. App. July 25, 1989) (finding sufficient evidence to convict defendant motel guest of disorderly conduct because another guest complained about loud noise coming from room in the early morning and defendant argued loudly in the hallway with the motel manager and a police officer for an extended period of time). Therefore, the Court grants summary judgment in favor of the individual officers on this claim.[8]

    3.    *Excessive force*

The individual officers argue that they did not use excessive force against Maeberry. Excessive force claims are analyzed under an "objective reasonableness standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). The question is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. Whether an officer's use of force is reasonable "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. "Circumstances such as the severity of the crime, whether the suspect posed a threat to the safety of the officers or others, and whether the suspect

---

[7] It is irrelevant that Maeberry was actually arrested for domestic assault and obstructing legal process. *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ("[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause."); *McCabe v. Parker*, Nos. 09-1185, 09-1847, 2010 U.S. App. LEXIS 13327, at *24 (8th Cir. June 30, 2010) (noting that probable cause need exist only "to believe some criminal offense had been committed").

[8] Because Maeberry's arrest was supported by arguable probable cause, the Court does not address whether Peck, Willis, and Dagenais participated in the arrest.

was resisting arrest are all relevant to the reasonableness of the officer's conduct." *Foster v. Metro. Airports Comm'n*, 914 F.2d 1076, 1081 (8th Cir. 1990). Courts may also consider the result of the force in analyzing an excessive force claim. *See Crumley v. City of St. Paul*, 324 F.3d 1003, 1007 (8th Cir. 2003); *Patzner*, 779 F.2d at 1371. The right to be free from excessive force is clearly established under the Fourth Amendment's prohibition against unreasonable seizures of the person. *Graham*, 490 U.S. at 394-95; *Guite*, 147 F.3d at 750. A court must nevertheless "make a fact-intensive inquiry in light of the specific context of the case to determine whether [an officer] is entitled to qualified immunity." *Rohrbough v. Hall*, 586 F.3d 582, 586-87 (8th Cir. 2009) (quotation marks omitted). "The dispositive inquiry is whether 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

Here, summary judgment on the excessive force claims against Peck, Willis, and Dagenais is warranted because there is no evidence that they had any physical contact with Maeberry. The evidence, however, supports a finding that Maeberry did not resist arrest but was nevertheless sprayed in the face with ASR by two officers after being handcuffed. Heu admits that she used ASR on Maeberry. Carter assisted in the arrest of Maeberry in the apartment, and it is reasonable to infer that he also sprayed Maeberry with ASR. The gratuitous use of ASR on a restrained suspect is excessive force. *See Henderson v. Munn*, 439 F.3d 497, 502-03 (8th Cir. 2006) (finding use of pepper spray on arrestee who "was lying face down on the ground with both arms restrained behind his back and in pain due to his leg injury" was not objectively reasonable under the circumstances); s*ee also Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 903 (6th Cir. 2004) ("[I]t is clearly established that the Officers' use of pepper spray against Champion after he was handcuffed and hobbled was excessive."); *Vinyard v. Wilson*, 311 F.3d

1340, 1348 (11th Cir. 2002) ("Courts have consistently concluded that using pepper spray is excessive force in cases where the crime is a minor infraction, the arrestee surrenders, is secured, and is not acting violently, and there is no threat to the officers or anyone else.").

There is also evidence that Maeberry was severely beaten after being taken outside to the squad car. Maeberry claims that he could not see because of the ASR when he, Heu, Carter, and Hagen arrived at the squad car. After the car door was opened, Maeberry, allegedly without provocation, was punched in the eye, knocked to the ground, struck with a flashlight, and kicked multiple times. It is undisputed that Heu struck Maeberry with her flashlight, and in light of Carter's proximity to the altercation, it is reasonable to infer that he too inflicted blows on Maeberry. As a result of being struck by the officers, Maeberry suffered severe bruising that required a visit to the emergency room and caused pain that lasted several months. Accepting all of these facts as true, and in view of Maeberry's arrest for two misdemeanor offenses, the Court determines that a reasonable officer would have known that the force used against Maeberry was excessive. Accordingly, Heu and Carter are not entitled to qualified immunity, and summary judgment in their favor on this claim is not warranted.

    *4.*    *Failure to protect*

The individual officers maintain that no evidence supports a claim for failure to protect Maeberry from the unconstitutional infliction of force by the other officers. "'[O]ne who is given the badge of authority of a police officer may not ignore the duty imposed by his office' by failing to act to prevent the use of excessive force." *Nance v. Sammis*, 586 F.3d 604, 611-12 (8th Cir. 2009) (quoting *Putman v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981)). An officer will thus be liable for failing to intervene to halt the unconstitutional use of force if "'(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the

officer had both the opportunity and the means to prevent the harm from occurring.'" *Id.* at 612 (quoting *Floyd v. City of Detroit*, 518 F.3d 398, 406 (6th Cir. 2008)). At the time of the individual officers' actions in this case, "it was clearly established that a state actor may be liable for an unreasonable seizure under the Fourth Amendment if he fails to intervene to prevent the unconstitutional use of excessive force by another official." *Krout v. Goemmer*, 583 F.3d 557, 565 (8th Cir. 2009); *see also Nance*, 586 F.3d at 612.

No facts reasonably support a finding that Willis or Dagenais was close enough to Maeberry to prevent the use of ASR on him or to stop him from being punched, struck, and kicked at the squad car. Therefore, the Court grants summary judgment in their favor on this claim. In contrast, the evidence supports a finding that Carter and Peck were near Maeberry at the time the ASR was used against him. Although Maeberry testified that the use of the ASR happened quickly, the close proximity of Peck and Carter to Maeberry creates a fact issue as to whether they had the opportunity and means to intervene to stop the alleged unconstitutional use of the ASR.[9] In addition, Carter was near the squad car at the time Maeberry was punched in the eye, struck with a flashlight, and kicked in the chest and stomach. The Court determines that a fact issue exists as to whether Carter had the opportunity and ability to prevent the use of excessive force against Maeberry at the squad car. Furthermore, although it is undisputed that Heu struck Maeberry with her flashlight, it is possible that she also had the opportunity and ability to prevent the other officer (or officers) from punching and kicking Maeberry. Therefore, the Court denies summary judgment as to Peck, Heu and Carter on this claim.

---

[9] This result assumes that the finder of fact determines that Carter did not use ASR on Maeberry. Similarly, because it is undisputed that Heu used ASR on Maeberry, it makes no sense to inquire as to whether she failed to prevent such use of force.

5.  *Retaliation*

Maeberry claims that the individual officers retaliated against him in violation of the First Amendment by breaking down his door and using physical force against him because he told them that he would not open the door to his apartment.[10] The individual officers argue that Maeberry did not engage in protected activity and, even if he did, no evidence supports a finding that their conduct was motivated by such protected activity.

A plaintiff establishes a prima facie case for retaliation in violation of the First Amendment by showing that "(1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004). "Retaliation need not have been the sole motive, but it must have been a 'substantial factor.'" *Kilpatrick v. King*, 499 F.3d 759, 767 (8th Cir. 2007). "Furthermore, the plaintiff must show that the retaliatory motive was a but-for cause of the harm; that is, that the plaintiff was 'singled out' for adverse treatment because of his exercise of constitutional rights." *Id.* "A citizen's right to exercise First Amendment freedoms without facing retaliation from government officials is clearly established." *Baribeau*, 596 F.3d at 481 (quotation marks omitted).

Assuming that Maeberry engaged in protected conduct, the evidence does not reasonably support a finding that the individual officers retaliated against him because of that conduct.

---

[10]  Maeberry also asserts that he should be permitted to maintain a claim of retaliation "on the theory that" the individual officers retaliated against him because he exercised "his fourth amendment right (here, not to consent to entry without [a] warrant)." As Maeberry concedes, no precedent from the United States Court of Appeals for the Eighth Circuit supports such a claim. Moreover, the scope of the claim appears to be identical to Maeberry's claim for retaliation based on the First Amendment. The Court, therefore, refuses to recognize a cause of action under the Fourth Amendment for retaliation based upon Maeberry's refusal to "consent to entry without [a] warrant."

Instead, it is apparent that Maeberry's refusal to open the door increased the officers' suspicion that someone inside the apartment needed assistance. Their decision to force entry into the apartment and all subsequent events were motivated by that suspicion rather than Maeberry's assertion that he would not open the door. Accordingly, because Maeberry cannot establish that retaliation was a substantial factor motivating the conduct of the individual officers, the Court grants summary judgment on this claim. *See Lawrence v. Bloomfield Twp.*, 313 F. App'x 743, 749 (6th Cir. 2008) (per curiam) (finding no retaliation where officers arrested individual for interfering with their "attempts to conduct a brief [lawful] search of the house—not for the content of his speech or his assertion of rights").

**B.      City's liability**

The City contends that Maeberry's claim against it should be dismissed. Municipalities and other local governmental entities can be sued under § 1983 for the entity's unconstitutional or illegal policies or customs. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). Commonly referred to as a *Monell* claim, a plaintiff must prove that a municipal policy or custom was the "moving force of the constitutional violation" for a municipality to be liable. *Id*. An official policy involves a deliberate choice to follow a course of action made from among various alternatives by an official who has the final authority to establish policy. *Ware v. Jackson County, Mo.*, 150 F.3d 873, 880 (8th Cir. 1998). Alternatively, a "custom or usage" is demonstrated by: (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; and (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct. *Id.*

Maeberry argues only that the City "has no policy prohibiting retaliation." No evidence supports this assertion. Furthermore, to the extent that Maeberry bases his claim on the City's failure to adequately train its officers, there is insufficient evidence to support such a claim. *Cf. Thelma D. v. Bd. of Educ.*, 934 F.2d 929, 934-35 (8th Cir. 1991) ("[T]he fact that 'a particular [employee] may be unsatisfactorily trained will not alone suffice to fasten liability on the [municipal entity].'" (quoting *City of Canton v. Harris*, 489 U.S. 378, 390-91 (1989))). Therefore, the Court grants summary judgment in favor of the City.

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. The Motion for Summary Judgment of the City, Peck, Willis, Carter, and Dagenais [Docket No. 21] is GRANTED IN PART AND DENIED IN PART.

2. Summary judgment in favor of the City, Willis, and Dagenais is GRANTED.

3. Summary judgment in favor of Peck is GRANTED as to the illegal entry, illegal arrest, excessive force, and retaliation claims, but DENIED as to the failure to protect claim.

4. Summary judgment in favor of Carter is GRANTED as to the illegal entry, illegal arrest, and retaliation claims, but DENIED as to the excessive force and failure to protect claims.

5. The Motion for Summary Judgment of Heu [Docket No. 28] is GRANTED IN PART AND DENIED IN PART.

6. Summary judgment in favor of Heu is GRANTED as to the illegal entry, illegal arrest, and retaliation claims, but DENIED as to the excessive force and failure to protect claims.

Dated: July 16, 2010

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge